OPINION
{¶ 1} These appeals arise from the Lake County Court of Common Pleas. On May 17, 2002, appellant, Jason R. Laveck ("Laveck"), was indicted on one count of burglary, a felony in the second degree.
 {¶ 2} The following facts were presented by the state at trial.
 {¶ 3} On November 19, 2001, Abdulla Hussain left his house, where he resided with his seventeen-year-old son, Muthana Hussain, at approximately 6:30 a.m. to work at the convenience store he owned. Both his residence and store were located in Willowick, Ohio. When Abdulla left, Muthana remained at home getting ready to go to school. At approximately 3:30 p.m., after Muthana returned home from school, he called his father at the store to tell him that one of the doors of the house was unlocked and slightly ajar. Muthana told his father he remembered locking the door before leaving for school that morning. Abdulla instructed his son to check the entire house to see if anything was missing. Muthana checked the residence and reported to his father everything appeared to be in order. Abdulla returned to the house at approximately 6:30 p.m. Sometime that evening, he went to his bedroom to retrieve a suitcase that he kept under his bed. The suitcase contained important papers as well as Yemen and Saudi Arabian currency. Abdulla needed to remove papers from the suitcase to make photocopies of them. However, upon looking under the bed, he discovered that the suitcase was missing. Abdulla asked his son about the suitcase, and Muthana indicated that he had not touched it.
 {¶ 4} After discovering that the suitcase was missing, Abdulla conducted a thorough search of the house and discovered that a basement window had been broken. He then realized that perhaps his home had been burglarized. He contacted the Willowick Police Department at approximately 9:00 p.m.
 {¶ 5} Detective Robert Prochazka accompanied uniformed officers to the scene to investigate the reported burglary. After investigating the scene, Detective Prochazka concluded the basement window had been smashed in and an interior screen had been cut to gain entrance into the home. Photographs were taken and several shards of glass were taken into evidence. Ultimately, no identifiable fingerprints or shoeprints could be recovered from the scene.
 {¶ 6} On November 24, 2001, five days after the burglary, two boys found the missing suitcase in a dumpster at a local shopping plaza located near the Hussain residence. Abdulla's personal papers were still in the suitcase; however, the foreign currency was not. The boys took the suitcase to the Willowick police station. The police contacted Abdulla, who identified the suitcase as the one removed from his home. The personal papers were given back to him while the suitcase was retained by the police for further investigation. Partial latent fingerprints were subsequently lifted from the suitcase and submitted to the Lake County Regional Forensic Laboratory. The prints ultimately lacked sufficient detail for analysis.
 {¶ 7} Because the police had no fingerprints, shoeprints, or other identifying evidence to rely upon, they had no suspects in the burglary. However, on December 29, 2001, approximately five weeks after the burglary, the Willowick Police Department arrested two individuals for disorderly conduct. Those individuals were Robert Murton and Deanna Carter. While Murton and Carter went through the booking process at the police station, Carter alerted the police that she knew who had burglarized the Hussain residence the month before. Carter told the police that Laveck had committed the crime. Murton and Carter both knew Laveck, as Murton and Laveck were lifelong friends from early childhood and Carter met Laveck as a result of her relationship with Murton. Murton then corroborated Carter's statement. The police asked Carter if she had any details of the incident. Carter told the officers Laveck kicked in the basement window and took foreign currency from Abdulla's bedroom.
 {¶ 8} The police officers took preliminary statements from both Carter and Murton and forwarded them to Detectives Prochazka and Malady, who were overseeing the Hussain burglary investigation. Detective Prochazka decided to make initial contact with Laveck. He and another detective went to Laveck's residence to speak with him about the matter. Laveck answered the door when the detectives arrived, but refused to speak with them about the incident. Detective Prochazka then elected to interview Abdulla to determine whether he recognized Laveck. Prochazka obtained a picture of Laveck from the Bureau of Motor Vehicles in Columbus and presented the photo to Abdulla at the convenience store. Abdulla did not know Laveck by name, but recognized him as a frequent customer at his store. Abdulla noted that Laveck had stopped coming into the store since the burglary occurred.
 {¶ 9} Detective Prochazka contacted Murton and Carter to discuss the statements they had made to the police. Both corroborated their prior statements about Laveck perpetrating the offense. The police checked on the alibis given by Murton and Carter regarding their whereabouts on the day the burglary occurred. Murton stated he had met with his probation officer on that day and Carter had accompanied him. Murton's probation officer verified that she had met with Murton on that day.
 {¶ 10} The police subsequently obtained an arrest warrant for Laveck. The municipal court also issued a search warrant, authorizing the police to search Laveck's residence for evidence relating to the burglary. Detectives Prochazka and Malady, as well as other uniformed officers, executed the warrants on January 8, 2002. Laveck and his younger brother were present when the police arrived. After thoroughly searching the residence, the police were unable to recover any foreign currency or evidence relating to the burglary.
 {¶ 11} The police interviewed Laveck on the evening of January 8, 2002, after taking him into custody. In his initial story to the police, Laveck stated a black drug dealer named "Lamar" was responsible for breaking into the Hussain residence in retaliation against Muthana for a previous drug deal that had gone bad. Laveck was not able to provide a last name, telephone number, or address for Lamar. When asked where he was when the burglary occurred, Laveck stated that he had been working at a Rally's restaurant in Cleveland. The police conducted a follow-up with the restaurant and discovered that Laveck had never been employed there.
 {¶ 12} The following day, Laveck altered his story. He implicated Murton in the burglary. Laveck stated that he had been at home sleeping until 12:30 p.m., when Murton showed up at his house and awakened him. Laveck stated that Murton had already committed the burglary, and showed up with the foreign currency, asking Laveck to help him try to find a method to exchange the money. Laveck then admitted that he tried to help Murton exchange the money by placing calls to various banks and credit card companies.
 {¶ 13} In this second statement to the police, Laveck admitted that he and Murton had prior discussions about burglarizing the Hussain residence. He stated they had planned on stealing a gun that was supposedly inside the home. Laveck claimed however, despite their prior discussions about burglarizing the home, Murton had proceeded to burglarize the Hussain residence on his own. Laveck provided a complete written statement to the police that detailed the foregoing facts.
 {¶ 14} The police again interviewed Murton, this time at the police station, where they showed him Laveck's written statement. Murton adamantly protested Laveck's version of the events and provided a second statement, corroborating his earlier account of events, implicating Laveck.
 {¶ 15} The police also interviewed Carter a second time. Similarly, when shown Laveck's written statement, Carter vehemently disagreed with Laveck's account of the incident. Carter also corroborated her earlier statements, implicating Laveck in the crime.
 {¶ 16} The police subsequently obtained a subpoena, permitting them access to cell phone records from November 2001, for both Laveck and Murton. The cell phone records revealed Laveck placed several calls to Murton on the day of the burglary, beginning at 9:51 a.m., contradicting Laveck's contention that he was sleeping until awakened by Murton at around 12:30 p.m. The records also showed that Laveck placed two calls to Willoughby North High School, where Muthana Hussain was attending classes on the day of the burglary. There were no calls from Laveck's phone between 12:13 p.m. and 12:47 p.m. After that, several calls were made to various banking and financial institutions.
 {¶ 17} Laveck was ultimately indicted on one count of burglary, a felony of the second degree. Laveck pled not guilty to the charge as set forth in the indictment. The matter proceeded to a jury trial on October 7, 2002. The state presented a number of witnesses, including Abdulla Hussain, the investigating police officers, Carter, and Murton. At the close of the state's evidence, the defense did not move for a judgment of acquittal pursuant to Crim. R. 29. The proceedings continued, and the defense rested without calling any witnesses. The jury convicted Laveck of a lesser included offense of burglary, a felony in the third degree. On November 21, 2002, the trial court ordered Laveck to serve a stated prison term of three years for the burglary conviction.
 {¶ 18} Laveck filed an appeal of his conviction and sentence. As that appeal was pending, and approximately one hundred eighty-six days after the trial court entered the judgment of conviction and sentence, Laveck filed a motion seeking leave to file a Crim. R. 33(B) motion for a new trial based on newly discovered evidence. Specifically, Laveck contended that months after trial, Murton recanted his testimony implicating Laveck in the burglary. The trial court denied Laveck's motion and he filed a second appeal of that judgment. Both appeals have been consolidated by this court for all purposes.
 {¶ 19} Laveck presents a total of six assignments of error on appeal. The first assignment of error is:
 {¶ 20} "The trial court erred to the prejudice of defendant-appellant in overruling trial counsel's objections during the redirect examination of Detective Prochazka."
 {¶ 21} In his first assignment of error, Laveck contends the trial court abused its discretion in overruling trial counsel's objections during the state's redirect examination of Detective Prochazka. Specifically, Laveck contends the state consistently utilized leading questions on direct examination, in contradiction to Evid. R. 611(C).
 {¶ 22} Evid. R. 611(C) provides:
 {¶ 23} "Leading questions should not be used on direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."
 {¶ 24} The decision whether to permit leading questions on direct examination is left to the discretion of the trial court.[1] Laveck offers two different examples of when objections to leading questions were overruled. Each example is during the redirect examination of Detective Prochazka and relates to Murton's cell phone records. The first is as follows:
 {¶ 25} "Q: And again, on direct exam I had you read the duration of the — the approximate, 12 phone calls that were placed from Bob Murton's cell phone to Deanna Carter's home on the morning of the burglary starting at 9:17 in the morning going right up to noon there were, approximately 12 calls made?
 {¶ 26} "A: Correct.
 {¶ 27} "Q: Of those 12 calls, how many exceeded a minute?
 {¶ 28} "A: One.
 {¶ 29} "Q: One call. And indeed, weren't the vast majority of those calls nothing more than nine, ten-second calls where, quite possibly, the number was busy and it was simply a hang-up where they got a message indicating that the internet was tying up the phone line?
 {¶ 30} "A: Sure.
 {¶ 31} "Q: So wouldn't that be entirely consistent with the account that Deanna Carter told you regarding her whereabouts —
 {¶ 32} "Mr. Deeb: Objection.
 {¶ 33} "* * *
 {¶ 34} "Court: Do the question over from the beginning.
 {¶ 35} "Q: Aren't the duration of those phone calls entirely consistent with the account that Deanna Carter told you regarding her whereabouts and her activities on the morning of the burglary when she was with Bob Murton?
 {¶ 36} "Mr. Deeb: Objection.
 {¶ 37} "Court: Overruled.
 {¶ 38} "A: Yes."
 {¶ 39} The second line of questioning to which Laveck objected related to the alleged time period in which the burglary occurred:
 {¶ 40} "Q: He could have had a conversation wherein the Defendant-Appellant, Jason, told Bob: I did it, I found a bunch of foreign money —
 {¶ 41} "A: Sure.
 {¶ 42} "Q: — isn't that true?
 {¶ 43} "A: Yes, sure.
 {¶ 44} "Q: That conversation could have taken place at 11:52 a.m. on that cell phone call?
 {¶ 45} "A: Correct.
 {¶ 46} "Q: And again, at 11:59 Jason Laveck calls his friend Bob on his cell phone; how long did that phone call last?
 {¶ 47} "A: 42 seconds.
 {¶ 48} "Q: 42 seconds. Then he called immediately back at noon; how long does that cell phone call last?
 {¶ 49} "A: 32 seconds.
 {¶ 50} "Q: So if you add up those two calls up, you're talking about 74 seconds, a minute 14 seconds. Isn't it possible that Jason Laveck told him in those phone calls: I just did it. I got the foreign money?
 {¶ 51} "Mr. Deeb: Objection.
 {¶ 52} "Court: Overruled.
 {¶ 53} "A: Sure.
 {¶ 54} "Q: Isn't that quite possible?
 {¶ 55} "A: Yes it is."
 {¶ 56} The state contends that this line of questioning is permissible as hypothetical questions posed to the detective about the possible conversation that may have occurred during those times. Laveck asserts that the questions permitted the state to testify rather than the witness. We agree.
 {¶ 57} Both lines of questioning, particularly the second, are troubling for a number of reasons. Most notably, the jury is hearing the investigating detective testify about the supposed substance of a phone call in which the accused admits to committing the offense. The detective had only the times and duration of each phone call and was not privy to the substance of any of the conversations. Thus, he could not testify as to what was said during those conversations and certainly had no knowledge of any confession of wrongdoing by the accused. To allow the jury to hear a police detective testify that the accused most certainly could have admitted to his friend that he committed the crime at issue is clearly not admissible testimony and trial counsel's objections should have been sustained.
 {¶ 58} We also note, after a careful examination of the trial transcript, the state exhibited an ongoing practice of asking leading questions of each witness at trial, not limiting this practice to the line of questioning involving Detective Prochazka. We find this practice had a prejudicial effect, thus necessitating a new trial.
 {¶ 59} Thus, we conclude that the trial court abused its discretion in overruling trial counsel's objections to the foregoing line of questioning and the resulting testimony clearly prejudiced Laveck. Therefore, we conclude that, based on the prejudicial testimony by Detective Prochazka, the outcome of the trial was affected and a new trial is in order.
 {¶ 60} Laveck's first assignment of error is with merit.
 {¶ 61} The second assignment of error is:
 {¶ 62} "Defendant-appellant was unduly prejudiced by ineffective assistance of trial counsel."
 {¶ 63} In his second assignment of error, Laveck contends that he was deprived of the effective assistance of counsel when trial counsel failed to move for an acquittal both at the end of the state's case. Laveck contends that trial counsel was ineffective for failing to preserve the issue of the sufficiency of the evidence for appeal.
 {¶ 64} It is presumed that a properly licensed attorney in the state of Ohio has rendered effective assistance to a criminal defendant.[2]
In order to demonstrate ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in Strickland v. Washington.[3]
First, pursuant to Strickland, the defendant must show that counsel's performance was deficient, in that the representation fell below the objective standard of reasonableness.[4] Second, the defendant must show that counsel's deficient performance prejudiced the defendant, meaning that, but for counsel's errors, the outcome of the proceeding would have been different.[5] This court has adopted the Strickland
standard for ineffective assistance of counsel.[6]
 {¶ 65} "The failure to assert a Crim. R. 29 motion is not, per se, ineffective assistance of counsel."[7] The defense in a criminal case asserts a Crim. R. 29 motion to test the sufficiency of the evidence. Without the submission of a Crim. R. 29 motion for acquittal with the trial court, any argument relating to the sufficiency of the evidence is deemed waived on appeal. As is set forth in our analysis in the third assignment of error, the state presented sufficient evidence to sustain the conviction. Thus, where there does not appear to be adequate grounds to challenge the sufficiency of the evidence, counsel is not obligated to put forth futile motions. Therefore, Laveck was not prejudiced by trial counsel's decision not to assert a Crim. R. 29 motion as it would not have affected the ultimate outcome of the trial.
 {¶ 66} Laveck's second assignment of error is without merit.
 {¶ 67} The third assignment of error is:
 {¶ 68} "The state produced insufficient evidence to support appellant's conviction."
 {¶ 69} In his third assignment of error, Laveck contends that the state produced insufficient evidence at trial to support his burglary conviction.
 {¶ 70} It is well-established that, "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."[8] The appropriate standard for evaluating the sufficiency of evidence "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[9]
 {¶ 71} As noted in our foregoing analysis under the second assignment of error, it is well-settled that in order to preserve a challenge of the sufficiency of the evidence on appeal, a defendant must file a timely Crim. R. 29 motion for acquittal with the trial court.[10] Trial counsel in the instant case failed to move for an acquittal, therefore, Laveck has waived the issue of sufficiency of the evidence on appeal. However, in light of our analysis relating to ineffective assistance of trial counsel, we will address Laveck's sufficiency argument on the merits.
 {¶ 72} R.C. 2911.12(A)(3) defines burglary, a felony in the third degree as:
 {¶ 73} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 74} "* * *
 {¶ 75} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense[.]"
 {¶ 76} Laveck contends the elements of trespass and identity were not proven beyond a reasonable doubt. In support of that contention, he asserts that there were no eyewitness accounts of his presence at the home and there was insufficient evidence that identified Laveck as the perpetrator of the offense.
 {¶ 77} At trial, the state provided the testimony of the investigating officers, the victim, and both Murton and Carter. The evidence presented included the facts that: (1) Murton and Laveck had discussed burglarizing the Hussain residence in the past; (2) Murton and Carter had been together for the majority of the day on the day the burglary occurred; (3) Laveck's earlier statement about sleeping until 12:30 p.m. on the day of the burglary was refuted by the cell phone records; (4) Laveck offered a variety of inconsistent stories about his whereabouts on the day of the burglary.
 {¶ 78} When viewing the evidence presented in a light most favorable to the prosecution, we find the evidence was sufficient to sustain a conviction for burglary, a felony in the third degree.
 {¶ 79} Laveck's third assignment of error is without merit.
 {¶ 80} The fourth assignment of error is:
 {¶ 81} "Defendant-appellant's conviction is against the manifest weight of the evidence."
 {¶ 82} In his fourth assignment of error, Laveck contends that his conviction is against the manifest weight of the evidence. We conclude based on the foregoing analysis of the first assignment of error, this issue is rendered moot as a result of the need for a new trial. Thus, pursuant to App. R. 12(A)(1)(c), the merits of Laveck's fourth assignment will not be addressed.
 {¶ 83} Laveck's fourth assignment of error is moot.
 {¶ 84} The fifth assignment of error is:
 {¶ 85} "The trial court erred to the prejudice of defendant-appellant by imposing a three-year prison term for a felony of the third degree."
 {¶ 86} In his fifth assignment of error, Laveck contends that the trial court erred in sentencing him to a three-year prison term. This argument is based upon Laveck's assertion that the evidence did not support a term greater than the minimum. Again, we would note that, based on the foregoing analysis of the first assignment of error, this issue has become moot, and any error by the trial court in sentencing will be cured as a result of the need for a new trial. Thus, pursuant to App. R. 12(A)(1)(c), the merits of Laveck's fifth assignment will not be addressed.
 {¶ 87} Laveck's fifth assignment of error is moot.
 {¶ 88} The sixth assignment of error, presented through the second appeal is:
 {¶ 89} "The trial court abused its discretion in denying appellant's motion for leave to file a motion for new trial based upon newly discovered evidence."
 {¶ 90} In his sixth assignment of error, Laveck asserts the trial court abused its discretion by denying his request for permission to file an untimely motion for a new trial. Although we have concluded that this matter should be remanded for a new trial, we will briefly address Laveck's contention.
 {¶ 91} A motion for a new trial pursuant to Crim. R. 33 is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.[11] The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.[12]
 {¶ 92} In the instant case, Laveck filed a request to file a motion for a new trial pursuant to Crim. R. 33. Such a request is subject to the trial court's discretion. The trial court overruled Laveck's request. Laveck contends that the trial court abused its discretion when it overruled the request without setting forth any specific factual findings. When overruling a motion for a new trial, the trial court is not obligated to issue findings of fact or conclusions of law in support of its denial of the motion.[13]
 {¶ 93} Laveck also contends that the trial court abused its discretion in denying the motion, as a new trial is warranted based on newly discovered evidence (i.e. Murton has since recanted his testimony.)
 {¶ 94} A new trial may be granted on a motion, "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."[14]
Moreover, a motion for new trial, "shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided[.]"[15]
 {¶ 95} In addition, the rule provides that motions for a new trial based on newly discovered evidence shall be filed within one hundred twenty days after the day the verdict was rendered, unless defendant proves, by clear and convincing evidence, that defendant was unavoidably prevented from filing it timely.[16]
 {¶ 96} Thus, Laveck had the burden of showing, by clearing and convincing proof, that he was unavoidably prevented from filing his motion within one hundred twenty days. The jury returned its guilty verdict on October 9, 2002. The one hundred twenty-day time period expired on February 6, 2003. Laveck filed his motion on June 10, 2003. The only proof provided by Laveck is the fact that Murton's decision to recant his testimony was a decision that only Murton could make and that time period was not one which Laveck could control. Murton's affidavit, recanting his testimony, was dated May 1, 2003. Laveck provides no justification for the delay of the motion until June 10, 2003.
 {¶ 97} In review of the motion and the proffered "new discovered evidence," we cannot conclude that the trial court abused its discretion in overruling Laveck's motion. Laveck did not show by clear and convincing proof that he was unavoidably prevented from filing a timely motion in this matter.
 {¶ 98} Laveck's sixth assignment of error is without merit.
 {¶ 99} Laveck's second, third, and sixth assignments of error are without merit. Laveck's first assignment of error, relating to the leading questions during the direct testimony of Detective Prochazka, is with merit and, as such, Laveck's fourth and fifth assignments of error are moot. Thus, the trial court's judgment of conviction is reversed, and the matter is remanded for a new trial.
Rice, J., concurs with Concurring Opinion,
Grendell, J., concurs in part, dissents in part, with Concurring/Dissenting Opinion.
[1] Ramage v. Central Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 111; State v. Benson, 11th Dist. No. 2001-P-0086, 2002-Ohio-6942, at ¶ 22.
[2] State v. Lott (1990), 51 Ohio St.3d 160, 174; State v. Hurd,
11th Dist. No. 2001-T-0086, 2002-Ohio-7163, at ¶ 32.
[3] Strickland v. Washington (1984), 466 U.S. 668, at paragraph two of the syllabus.
[4] Id.
[5] Id.
[6] Hurd, at ¶ 32.
[7] State v. Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at ¶ 33.
[8] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[9] Id.
[10] (Citation omitted.) State v. Blackburn, 11th Dist. No. 2001-T-0052, 2003-Ohio-605, at ¶ 43.
[11] State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus.
[12] State v. Adams (1980), 62 Ohio St.2d 151, 157-158.
[13] State ex rel. Collins v. Pokorny (1999), 86 Ohio St.3d 70.
[14] Crim. R. 33(A)(6).
[15] Crim. R. 33(B).
[16] Id.